Nos. 17-0327 & 17-0328 —        *David Ballard, Kevin McCourt, Jess Mattox, and Hobert Allen v. Miguel Angel Delgado*

**FILED**

**April 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Jenkins, Justice, dissenting:

In this case the majority has concluded that the defendant correctional officers and Warden Ballard are not entitled to qualified immunity in relation to Inmate Delgado's claims of excessive force and deliberate indifference arising from the correctional officers' efforts to maintain control of Inmate Delgado and the segregation unit at the Mount Olive Correctional Center. Because I believe these correctional officers and Warden Ballard are entitled to qualified immunity under the circumstances presented in this case, I respectfully dissent.

One of the dispositive questions included in the two-part test for qualified immunity asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). *See also Ballard v. Delgado*, No. 17-0327, 2019 WL 1441654, at *7, n.21 (W. Va. Mar. 25, 2019) (explaining, in majority opinion, that, pursuant to *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), "[t]rial courts now have the discretion regarding the order in which [the] two inquiries [for qualified immunity] are considered"). Based upon the facts of this case, I disagree with the majority that the conduct of the

1

correctional officers or Warden Ballard violated Mr. Delgado's constitutional rights, either by using excessive force or by deliberate indifference.

First, there was no excessive force in this case. Inmate Delgado clearly was a problem inmate. He was in the segregation unit, where he had been housed for six years, due to his chronic insubordination. The record in this case reflects that, on the day of the incident in question, Inmate Delgado became belligerent and verbally assaultive when the nurse did not respond quickly enough, in his mind, to his attempt to ask a question. The nurse was escorted from the area, but Inmate Delgado's disruptive conduct continued. Despite multiple loud, clear, verbal commands to cease creating a disturbance, Inmate Delgado continued in his defiant behavior, and it began to spread to other inmates, who also started yelling. After their verbal attempts to deescalate the situation had no effect, the correctional officers warned Inmate Delgado that they would use OC spray if he continued to disregard their commands. Thereafter, a correctional officer deployed two, one-second bursts of OC spray into Inmate Delgado's cell. Deploying two, one-second bursts of OC spray under these conditions was not excessive force, and was not done for the purpose of inflicting pain; rather, it was a discretionary act that became necessary as a result of Inmate Delgado's continued raucous conduct, and was a final attempt to restore order in the segregation unit. *See Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (recognizing that "'[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents *in quantities greater than necessary or for the sole purpose of infliction of pain*'" (quoting *Williams v.*

2

*Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)) (some emphasis added). Because the correctional officers deployed the OC spray in an effort to restore order, and not for the purpose of inflicting pain, and because such force was used only after their verbal attempts to calm the situation were ignored, the correctional officers are entitled to qualified immunity.

Likewise, the correctional officers were not deliberately indifferent to Inmate Delgado's medical needs. This claim is primarily based upon the delay in decontaminating Inmate Delgado. As the majority observes, the deliberate indifference analysis has an objective and a subjective component. *See Germain v. Metheny*, 539 F. App'x 108, 109 (4th Cir. 2013). "The plaintiff must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective). *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, [291], 50 L. Ed. 2d 251 (1976)." *Iko*, 535 F.3d at 241; *Delgado* at \*12. The objective component requires an inmate to "objectively show that the deprivation suffered or injury inflicted was 'sufficiently serious.'" *Id.* (Citation omitted). A "sufficiently serious medical need is one that *requires medical treatment*." *Id.* (Emphasis added). Although Inmate Delgado complained of the effects of the OC spray, the record simply lacks objective evidence that Inmate Delgado suffered a sufficiently serious injury that required *medical treatment*. Furthermore, during the delay of approximately one hour before the decontamination process was completed, the correctional officers did not demonstrate subjective deliberate indifference. The record shows that, after the OC spray was deployed, Inmate Delgado was able to wash his hands

3

and splash his face with water while still in his cell. Thereafter, Inmate Delgado was taken to the recreation yard for further decontamination of his face and eyes. Inmate Delgado complains about the denial of his request to have his handcuffs removed while he was in the recreation yard so that he could remove his shirt, but the denial was based upon issues of safety and security. In this regard it should not be overlooked that Inmate Delgado already is serving a sentence of life without mercy, and he has been in the segregation unit for six years as a result of his repeated insubordination; thus, safety and security are valid concerns. Also during this time, Inmate Delgado was taken to the nurse for a medical evaluation, and, after his cell was decontaminated, he was taken to the shower to complete his decontamination process. Accordingly, the evidence was insufficient to establish deliberate indifference, and the correctional officers were entitled to qualified immunity.[1]

For the foregoing reasons, I respectfully dissent.

---

[1] The correctional officers' entitlement to qualified immunity would render moot the supervisory liability claim against Warden Ballard.

4